UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LENA D. VILLELLA,

                                    Plaintiff,

            v.                                                    **DECISION AND ORDER**

                                                                    17-CV-898S

CITY OF LOCKPORT,

                                    Defendant.

## I.      Introduction

This is a Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), action where Plaintiff also alleges retaliation claims.  Before this Court is the Motion for Summary Judgment of Defendant City of Lockport ("City") (Docket No. 26).

For the reasons stated herein, Defendant City's Motion for Summary Judgment (Docket No. 26) is **granted**.

## II.      Background

A.  Complaint

Plaintiff filed her Complaint on September 12, 2017, alleging age and sex discrimination and retaliation (Docket No. 1, Compl.).  She was first hired by the City on April 3, 1987, and had a position as a real property appraiser when she filed her Complaint (id. ¶ 8).  During her tenure, she asked for, but was denied, pay upgrades (id. ¶ 9).  She was appointed Acting Assessor in July 2014 but paid only $64,000, while male department heads were paid $75,000 per year (id. ¶ 11), and she performed assessor's duties while also serving as real property appraiser but without an increased salary (id.

¶¶ 12, 16).  Despite performing both jobs, Plaintiff still was paid less than comparable male employees (id. ¶¶ 17, 39-44).

Plaintiff sought the permanent Assessor position but was denied because the City did not want to have three full-time employees in the Assessment Department, an answer Plaintiff terms to be pretextual (id. ¶¶ 18-20).  The position of Assessor remained vacant through 2015 and Plaintiff performed its functions without additional compensation (id. ¶ 23).  Plaintiff was passed over for promotion to Assessor full time in 2016 (id. ¶¶ 24-26).  Tracy Farrell eventually was appointed Assessor, but Plaintiff contends that she was younger than Plaintiff, had less experience, and did not meet the City Charter requirements for appointment (ten years field appraisal work experience, licensure to be an appraiser) (id. ¶¶ 26-28).  Plaintiff notes that she had a higher civil service examination score than Ms. Farrell for the Assessor position and nearly 28-years of experience (id. ¶¶ 29, 30).    Plaintiff concludes that the City (through Mayor Anne McCaffrey) discriminated against her because of her age and sex when she was not promoted to Assessor (id. ¶ 31); instead, the Mayor sought to appoint a male (who declined the position, id. ¶¶ 25, 31-32) and then appointed a younger female as Assessor (id. ¶¶ 31, 33).  Plaintiff, eligible for retirement in 2018, argues that the City did not promote her because of her age (id. ¶ 35).  Plaintiff filed grievances over the denied promotion (id. ¶¶ 37-38).

Plaintiff (with an otherwise spotless personnel record) also contends that, after complaining internally about being discriminated against, the City retaliated against her, with Ms. Farrell writing disciplinary memoranda to harass Plaintiff and to dissuade her from complaining further (id. ¶¶ 46, 49).  Ms. Farrell also had Plaintiff perform Assessor

duties, such as physically go out to the field to collect data, a material change in Plaintiff's duties but without additional compensation (id. ¶ 47). The City's investigation of Plaintiff's grievances over her denied promotion concluded in October 2016 that no discrimination occurred (id. ¶ 48).

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 8, 2016 (id. ¶ 6; Docket No. 26, Def. Memo. at 4). The agency issued a Right to Sue notice on June 14, 2017 (Docket No. 1, Compl. ¶ 7).

Plaintiff alleges three causes of action in her Complaint (Docket No. 1, Compl.). The First Cause of Action alleges Title VII violation for sex discrimination for being passed over for promotions in favor of male employees (id. ¶¶ 51-56). The Second Cause of Action alleges an ADEA violation for age discrimination in appointing Farrell (a younger woman) over her for Assessor (id. ¶¶ 58-63). Finally, the Third Cause of Action alleges retaliation in violation of Title VII (id. ¶¶ 65-70).

B. City's Motion for Summary Judgment

The City answered (Docket No. 4; see Docket No. 26, Def. Statement ¶ 6). After Magistrate Judge Jeremiah McCarthy entered a Case Management Order (with its amendments, Docket Nos. 10, 16, 19, 22; see Docket No. 26, Def. Statement ¶ 7), Defendant City moved for summary judgment (Docket No. 26[1]). Plaintiff in her Local Rule 56.1 Statement disputes many of the facts asserted by the City and claims that the City omitted certain facts (Docket No. 35, Pl. Rule 56.1 Statement at 2). However, she

---

[1]In support of its Motion, the City submits the declarations of its attorney, with exhibits; City Assessor Tracy Farrell; and City Personnel Director Mary Pat Holtz, with exhibits; its Statement of Material Facts; and its Memorandum of Law, Docket No. 26.
     In opposition, Plaintiff submits her Local Rule 56.1 Statement; her attorney's Declaration, with exhibits of affidavits from coworkers Susan Israel, Debra Allport, Jessica Stopa, and Vincent Smith, and excerpts from Plaintiff's deposition transcript; and her Memorandum of Law, Docket No. 35.
     The City replies with its Reply Memorandum, Docket No. 36.

also admitted to many of the City's claimed facts.  This Court will recite the City's facts and note Plaintiff's opposition when material.

1.  City's Facts and Plaintiff's Quest for Appointment as Assessor

Plaintiff was employed by the City from 1988 until she retired in August 2018 (Docket No. 26, Def. Statement ¶¶ 1, 15, 91; see Docket No. 35, Pl. Statement ¶ 1). Plaintiff submitted her retirement notice with no reference to any discrimination or retaliation charges and Plaintiff later admitted that no one from the City ever threatened to terminate her if she did not retire to compel her retirement (Docket No. 26, Def. Statement ¶ 91).

The City claims that Plaintiff is the same age as Mayor McCaffrey and Ms. Farrell (Docket No. 26, Def. Statement ¶ 1) but Plaintiff disputes this, claiming she was older (Docket No. 35, Pl. Statement ¶ 1).   Mayor McCaffrey was born in August 1967, Tracy Farrell in November 1965, and Plaintiff was born on August 3, 1963 (Docket No. 26, Def. Statement ¶¶ 10, 13-14, 81).   Plaintiff complains that the City did not hire her as permanent Assessor in 2004 (when Plaintiff was 40 years old), 2005, 2006, 2009, 2012, 2014, and 2016 (Docket No. 35, Pl. Statement ¶ 1).

The Mayor of Lockport during the relevant period of this case was Anne McCaffrey (Docket No. 26, Def. Statement ¶ 8).  Mary Pat Holtz was the City's Personnel Director in the City's Civil Service Department (id. ¶ 11).  Tracy Farrell was hired as City Assessor in May 2016 (id. ¶ 13).

Plaintiff was employed as Real Property Appraiser, the only person employed by the City in that position (id. ¶¶ 18-20).  She later served as Acting Assessor for the City from July 1, 2014, through December 31, 2014 (id. ¶ 23).  Mayor McCaffrey offered her

4

the acting position in July 2014 allegedly as a cost-saving measure as opposed to hiring a permanent Assessor (id. ¶ 24), but Plaintiff denies that the City lacked funds in its budget for a full-time permanent Assessor (Docket No. 35, Pl. Statement ¶ 24).  When offered the acting position, Plaintiff complained about the pay discrepancy with male department heads and that she did not want to report to the head of the Assessment Department (Docket No. 26, Def. Statement ¶ 25).  The City offered to increase Plaintiff's salary as Acting Assessor by $7,460 by adding it to her Real Property Appraiser salary (id. ¶ 26).  Despite her allegations that she had to perform two jobs during the six months she was Acting Assessor, Plaintiff never had to work longer hours (id. ¶ 27).

The City offered Plaintiff appointment to a second six-month stint as Acting Assessor in January 2015, but Plaintiff declined (id. ¶ 28).  The parties dispute why Plaintiff declined; Plaintiff claimed that she wanted the position permanently and to hire a third full-time employee in the Assessment Department, but the City refused for budgetary reasons (id. ¶ 29).  Plaintiff denied any budget issue precluded permanent appointments (Docket No. 35, Pl. Statement ¶ 29).

In 2015, the City hired Michael Hartman as Acting Assessor for four months and paid him $2,500 per month (or pro-rated to $30,000 per year) for that position (Docket No. 26, Def. Statement ¶¶ 30-31).  Hartman wrote a memorandum to Mayor McCaffrey stating that the Assessment Department was run inefficiently, that fewer full-time staff was required, and that the Real Property Appraiser (Plaintiff) should be checking inventory and working in the field inspecting properties for 20 hours per week (id. ¶ 33); Plaintiff merely admits to the existence of the memorandum (Docket No. 35, Pl. Statement ¶ 33).  Later in 2015, the City shared assessment services with the City of Niagara Falls

5

(Docket No. 26, Def. Statement ¶ 35), but Plaintiff denies the reason was cost savings to the City of Lockport (Docket No. 35, Pl. Statement ¶ 35).  In 2016, the newly elected Lockport Common Council withdrew from this shared services agreement and created a full-time Assessor position (Docket No. 26, Def. Statement ¶ 36; cf. Docket No. 35, Pl. Statement ¶ 36 (concluding that this action undercuts the City's budgetary arguments against creation of the Assessor position)).

Mayor McCaffrey began accepting and reviewing applications for the newly established Assessor position (Docket No. 26, Def. Statement ¶ 37).  Mayor McCaffrey gave several reasons why she did not appoint Plaintiff to this new position, such as Plaintiff speaking out against a payment in lieu of taxes arrangement the City favored, Plaintiff's insistence on the City hiring more full-time staff in the Assessment Department, the fact that two prior Acting Assessors (Hartman and Harry Williams) expressed their difficulties in working with Plaintiff, and that the Mayor did not see desired qualities (willingness to act in the best interest of the City, being a good team player, exercise integrity and good judgment) in Plaintiff (id. ¶ 40).  Plaintiff disputes these reasons and points to affidavits stating that affiant co-workers had no problem working with her (Docket No. 35, Pl. Statement ¶ 40; id., Pl. Atty. Decl., Exs. 1-4)).  McCaffrey then testified that she did not know Plaintiff's exact age but believed that they both were approximately the same age when she interviewed Plaintiff for the Assessor's position (Docket No. 26, Def. Statement ¶ 41).

The parties dispute whether the City residents complained about Plaintiff's performance or whether she told City residents that STAR exemptions were not available

due to the vacancy in the City Assessor's office (see Docket No. 35, Pl. Statement ¶¶ 38-39 (denying Defendant's Statement, Docket No. 26, ¶¶ 38-39)).

Also, the City alleges that it was difficult to fill the position of City Assessor because candidates considered Plaintiff to be a difficult person to work with (id. ¶ 21) but Plaintiff vehemently denies this allegation (Docket No. 35, Pl. Statement ¶ 21), and includes affidavits of four co-workers to refute this charge (Docket No. 35, Pl. Atty. Aff. Exs. 1-4).

2.   Appointment of Tracy Farrell as Assessor

Mayor McCaffrey eventually appointed Ms. Farrell as City Assessor (Docket No. 26, Def. Statement ¶ 42).   In her deposition, Plaintiff testified that she was not appointed because she was not male and "not one of the good old boys" (id. ¶ 82; id., Smith Decl. Ex. E, Pl. EBT Tr. at 210-11, 217-18).   She concluded that Ms. Farrell was appointed as a female assessor to avoid a sex discrimination lawsuit (Docket No. 26, Def. Statement ¶ 82; id., Smith Decl. Ex. E, Pl. EBT Tr. at 210-11).

Plaintiff denies that Ms. Farrell was qualified for the position (Docket No. 35, Pl. Statement ¶¶ 42, 43), despite the City submitting Farrell's application to the New York State Department of Taxation and Finance to confirm her qualifications for Assessor (id. ¶ 43; cf. Docket No. 26, Def. Statement ¶ 43).   Ms. Farrell was hired at an annual salary of $60,000, or $4,000 less than what Plaintiff earned as Acting Assessor (Docket No. 26, Def. Statement ¶ 44); Plaintiff points out Ms. Farrell lacked the experience Plaintiff had to be an Assessor (Docket No. 35, Pl. Statement ¶ 44).

In response to Plaintiff's internal age and sex discrimination complaints, the City retained an outside counsel (Defendant's present counsel, Docket No. 35, Pl. Statement ¶ 51) and counsel found no merit for her contentions (Docket No. 26, Def. Statement

¶¶ 50, 51).  The parties dispute whether Plaintiff filed written complaints alleging sex or age discrimination (Docket No. 35, Pl. Statement ¶ 52), but they agree Plaintiff filed a grievance for not being appointed City Assessor (Docket No. 26, Def. Statement ¶¶ 53-55).

Ms. Farrell testified that she did not trust Plaintiff when working in the Assessment Department (id. ¶¶ 56-58).  She issued various written counseling memoranda and disciplinary notices to Plaintiff, but denied doing so due to her age, gender, or prior discrimination complaints (Docket No. 26, Def. Statement ¶ 59).  Plaintiff argues this discipline was in retaliation for her prior complaints of discrimination (Docket No. 35, Pl. Statement ¶ 59).  For example, Ms. Farrell wrote memoranda to Plaintiff and Susan Israel citing them for accruing compensatory time without Tracy Farrell's prior approval (Docket No. 26, Def. Statement ¶ 60), a practice Plaintiff claims she and Israel had done for two years prior to Ms. Farrell's enforcement without incident (Docket No. 35, Pl. Statement ¶ 60).

Ms. Farrell then wrote a memorandum to Plaintiff regarding leaving inaccurate or misleading notes, but Plaintiff grieved the memorandum, and it was rescinded (Docket No. 26, Def. Statement ¶ 61).  She claims that it was issued in retaliation (Docket No. 35, Pl. Statement ¶ 61).

In or around April 2015, the job description for Real Property Appraiser was revised to specifically include field inspection and data collection (Docket No. 26, Def. Statement ¶ 63).  Plaintiff, however, failed to go into the field to appraise properties (id. ¶ 64).  Plaintiff counters that her position should not be in the field and viewed her job as to assist the Assessor "not do all of it" (Docket No. 35, Pl. Statement ¶ 65; see id. ¶ 67).  On or about

8

August 8, 2016, Ms. Farrell issued a memorandum to Plaintiff directing her to go out and appraise properties (Docket No. 26, Def. Statement ¶ 66).   Plaintiff grieved this memorandum, but she did not allege age or sex discrimination or that the memorandum was issued in retaliation; her grievance was denied (id. ¶ 68).

Ms. Farrell filed other memoranda, oral reprimands, and disciplinary notices to Plaintiff for failing to issue the required number of building permits, deleting an audit trail from the City's electronic database, and deleting three parcels from the City's database (id. ¶¶ 69, 71, 73-74).   Plaintiff unsuccessfully grieved this discipline and did not allege any discrimination or retaliation in her grievances (id. ¶¶ 70,72, 75-76).   Plaintiff later testified in her deposition that she did not believe this discipline was issued in retaliation (id. ¶ 77; see Docket No. 35, Pl. Statement ¶ 77), nor that the memoranda were retaliatory (Docket No. 26, Def. Statement ¶ 78; Docket No. 35, Pl. Statement ¶ 78).

Plaintiff testified that she was not appointed City Assessor due to her age and that she was approaching retirement (Docket No. 26, Def. Statement ¶ 83).   She also believed that she was not appointed because Mayor McCaffrey retaliated against Plaintiff for declining reappointment as temporary Acting Assessor in 2015 (id. ¶¶ 84, 89).

The City thus concludes that Plaintiff's discrimination claims are for not being appointed City Assessor in May 2016 and paying her less than male employees when she was Acting Assessor and Real Property Appraiser (id. ¶ 85; Docket No. 35, Pl. Statement ¶ 85 (Plaintiff admitted)).   Plaintiff admits that the male employees were not in the Assessment Department and none performed the same or substantially similar duties as Plaintiff did (Docket No. 26, Def. Statement ¶ 87; Docket No. 35, Pl. Statement ¶ 87 (Plaintiff admitted)).

The City further concludes that Plaintiff's only retaliation claim was Ms. Farrell's memoranda and other reprimands (Docket No. 26, Def. Statement ¶ 90).  Plaintiff claims that her retaliation claim also includes repeated failure to promote her to Assessor in retaliation (Docket No. 35, Pl. Statement ¶ 90).

### 3.  EEOC Charge

Plaintiff filed her charge of discrimination with the EEOC on November 8, 2016 (Docket No. 26, Def. Statement ¶ 2).  Three hundred days prior was January 13, 2016 (id. ¶ 3).  On or about June 14, 2017, the EEOC issued a Dismissal and Notice of Rights (id. ¶ 4; cf. Docket No. 35, Pl. Statement ¶ 4).   Plaintiff filed the present Complaint on September 14, 2017 (Docket No. 26, Pl. Statement ¶ 5; Docket No. 1, Compl.).

Responses eventually (cf. Docket Nos. 27, 29, 31 (Orders), 28, 30, 32 (Motions for extension of briefing schedule)) were due by October 15, 2019, with reply due November 8, 2019 (Docket No. 34).  The motion then was deemed submitted without oral argument.

### III.    Discussion

#### A.  Applicable Standards

##### 1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury

could return a verdict for the non-moving party," id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought,

11

however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant. Ford, supra, 316 F.3d at 354.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. Absent such an opposing statement, the facts alleged by the movant are deemed admitted. Each statement of material fact is to contain citations to admissible

evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

### 2.  Title VII

As this Court observed in other cases, e.g., Banks v. General Motors, No. 14CV970, 2020 WL 68277-7, at *7-8 (W.D.N.Y. Nov. 20, 2020) (Skretny, J.), a Plaintiff establishes Title VII discrimination either by direct evidence, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d. 523 (1985) ("TWA"); Teamsters v. United States, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (Docket No. 83, Pl. Memo. at 17), or by the burden shifting analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For direct evidence of discrimination, Plaintiff must meet her "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," Teamsters, supra, 431 U.S. at 358.  Plaintiff bears the burden of demonstrating that sex was a motivating factor in her adverse employment action, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas, supra, 411 U.S. at 802-04.

To allege a prima facie case, Plaintiff must show that she is a member of a protected class (here a female), that she was qualified for her position, that she suffered an adverse employment action, and the circumstances surrounding that action give rise to an inference of discrimination, 42 U.S.C. § 2000e-2; Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466-67 (2d Cir. 2001) (Docket No. 1, Compl. ¶ 51).

To prove a hostile work environment (as Plaintiff now claims in opposition to this Motion and to establish that her otherwise untimely claims could be considered, Docket

13

No. 35, Pl. Memo. at 5-6), she must prove that the workplace was permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe to alter the conditions of employment and create an abusive working environment, Lynch v. National Fuel Gas Distrib. Corp., 25 F. Supp.3d 358, 364-65 (W.D.N.Y. 2014) (Larimer, J.) (Docket No. 36, Def. Reply Memo. at 2); Banks, supra, 2020 WL 6827707, at *8 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

### 3.  Age Discrimination in Employment Act

The Age Discrimination in Employment Act ("ADEA") makes unlawful to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment because of her age, 29 U.S.C. § 623(a)(1).  Plaintiff must prove a prima facie case under this Act by showing she was in a protected age group (over 40 years of age, see General Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 591, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004), that she was qualified for her job, she was suffered an adverse employment action, and the adverse employment action arose under circumstances that give rise to an inference of age discrimination, Pena v. Brattleboro Retreat, 702 F.2d 322, 324 (2d Cir. 1983) (Docket No. 1, Compl. ¶ 58).

Plaintiff alleges an ADEA claim when she proves, by a preponderance of the evidence, that age was the "but for" cause of the challenged adverse action, Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010), citing Gross v. FBL Fin. Servs., Inc., 567 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

4.  Timeliness of Claim

A plaintiff must file charges (under Title VII or ADEA, see Wischnewski v. NRG Energy, Inc., No. 13CV1231, 2015 WL 4067155, at *5 (W.D.N.Y. July 2, 2015) (Scott, Mag. J.) (Report & Recommendation) (quoting Hogans v. Dell Magazines/Penny Press, 372 F. App'x 148, 149 (2d Cir. 2010) (summary Order)) (Docket No. 26, Def. Memo. at 4 n.12)) with the state equal employment agency within 300 days of the alleged discriminatory acts, 42 U.S.C. § 2000e-5(e)(1); Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000); Banks v. General Motors LLC, No. 14CV970, 2020 WL 6827707, at *9, 11 (W.D.N.Y. Nov. 20, 2020) (Skretny, J.).

5.  McDonnell Douglas v. Green Burden Shifting

For a prima facie case, Plaintiff must prove that an inference of discrimination where direct evidence is lacking leading to an application of the burden of proof shifting standard of McDonnell Douglas.  Under that standard, Plaintiff bears the burden of establishing a prima facie case of discrimination, Burdine, supra, 450 U.S. at 252-54; McDonnell Douglas, supra, 411 U.S. at 802, by a preponderance of the evidence, Burdine, supra, 450 U.S. at 252-53.  "The burden of establishing a prima facie case of disparate treatment is not onerous," id. at 253, basically that Plaintiff applied for a position or is employed in a job she was qualified for but was rejected or otherwise hindered under circumstances that give rise to an inference of unlawful discrimination, id.  The prima facie case creates a presumption of unlawful discrimination by the Defendant employer, id.

If Plaintiff meets this initial burden, the evidentiary burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action, id. at 254-56.  If that has been met, the burden shifts back to Plaintiff to show, beyond the prima facie case,

that Defendant's determination was the result of discrimination, id. at 256; see McDonnell Douglas, supra, 411 U.S. at 804-05.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," Burdine, supra, 450 U.S. at 253.  As noted by the Burdine Court, the McDonnell Douglas evidentiary burden shifting "serves to bring the litigants and the court expeditiously and fairly to this ultimate question," id., or as later held in the TWA case, "that the 'plaintiff [has] his [or her] day in court despite the unavailability of direct evidence,'" TWA, supra, 469 U.S. at 121 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)) (alterations added).

The Supreme Court observed that it had not definitively decided that the McDonnell Douglas burden shifting framework applies to ADEA cases, Gross, supra, 567 U.S. at 175 n.2; Gorzynski, supra, 596 F.3d at 105-06.  However, the Second Circuit applies its precedent and the McDonnell Douglas shifting to ADEA claims, Gorzynski, supra, 596 F.3d at 106; Lively v. WAFRA Invest. Adv. Group, Inc., ___ F.4th __, ___ n.3, 2021 WL 3118943, at *4 n.3 (2d Cir. July 23, 2021).

6.   Retaliation under Title VII

"Title VII also forbids retaliation against an employee for complaining of prohibited employment discrimination, stating that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of the employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII].' 42 U.S.C. § 2000e(a)," Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  To establish a retaliation under Title VII, Plaintiff must establish that she engaged in a protected activity, that the employer was aware of the activity, that the employer took adverse actions, and

16

that a causal connection exists between the protected activity and the adverse action, id. (Docket No. 1, Compl. ¶ 65).  "In other words, the plaintiff must show that the adverse employment action would not have occurred without the employer's retaliatory motive," Mula v. AbbVie, Inc., No. 15CV6563, 2018 WL 501277, at *5 (W.D.N.Y. Jan. 22, 2018) (Geraci, C.J.).  Sufficiently disruptive changes in job responsibilities to be actionable include a demotion, decrease in wage or salary, employment termination, and significantly diminished responsibilities, id.; Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

B.  Parties' Contentions

The City first argues that Plaintiff's claims arising before January 13, 2016, are time barred (Docket No. 26, Def. Memo. at 4-5).  The City denies that Plaintiff established either sex or age discrimination in the hiring of a younger woman as Assessor instead of Plaintiff (id. at 5-15) and argues that Plaintiff did not establish a prima facie case for either form of discrimination (id. at 7-11).

If Plaintiff arguably established a prima facie claim, the City counters that there were legitimate, non-discriminatory reasons for denying appointment to Assessor and that those reasons (seeking permanent positions during a City budget crisis, refusing to report to the person who oversaw the Assessment Department, and being difficult to work with) were not pretextual (id. at 11-15).  The City next argues that there was no evidence that any retaliation against Plaintiff was the but-for cause of any adverse employment action (id. at 16-22).  The City declares the counseling memoranda issued by Ms. Farrell were not adverse actions (id. at 18) and were based upon Plaintiff's performance (id. at 18-22).

Plaintiff replies that there are material issues of fact that preclude summary judgment to the City (Docket No. 35, Pl. Statement at 21).  She contends that there are vastly different versions of the facts from Plaintiff and the City and that a jury should ultimately resolve them (Docket No. 35, Pl. Memo. at 9-10, 15).  She submits affidavits from four coworkers disputing the claims that Plaintiff was difficult to work with (Docket No. 35, Pl. Atty. Decl. Exs. 1-4; Docket No. 35, Pl. Memo. at 2-3).  She states that she demonstrated that the City's alleged nondiscriminatory reasons were merely pretext for illegal discrimination (id. at 3) and that after complaining of the instances of discrimination, Farrell retaliated against her (id. at 4).

She contends that she alleges a hostile work environment for sex and age claim, hence justifying inclusion of events prior to January 13, 2016 (Docket No. 35, Pl. Memo. at 5-6).

Plaintiff argues that the City repeatedly discriminated against her for her gender by not promoting her to full-time City Assessor (id. at 6-10).  Applying the prima facie case standard, Plaintiff is a member of a protected class as a woman, she was qualified for the position from serving as Acting Assessor and as a Real Property Appraiser for 28 years (id. at 8).  She claimed she suffered an adverse employment action with these rejections (id.).  She concludes these rejections give rise to an inference of discrimination when the City appointed males (in contravention of Civil Service Law) or an underqualified (to Plaintiff) female (id. at 9).  Plaintiff claims she can prove the City's animus against strong females, such as her, from Mayor McCaffrey's seeking a "team player," which Plaintiff argues is evidence of sex stereotyping (id.).

Plaintiff next argues that the City retaliated against her for her complaints (a protected activity) (id. at 10-12).   For example, the memorandum against claiming compensatory time without approval, Plaintiff concludes was the product of retaliation (id. at 11-12), although another employee, Ms. Israel, was also cited.

Plaintiff also claims age discrimination in not being promoted to City Assessor when a younger (less qualified) woman was (id. at 12-14).

In reply, the City argues that Plaintiff's untimely discrimination claims should not be considered under the rubric of a hostile work environment (Docket No. 36, Def. Reply Memo. at 1-3).   The Complaint does not allege a hostile work environment and the City argues Plaintiff does not proffer evidence of a hostile work environment (id. at 2).

The City denies that there was evidence for an inference of sex or age discrimination in Plaintiff not being appointed City Assessor (id. at 3-5).   The City points out that the New York State Civil Service Commission confirmed that appointing Ms. Farrell as City Assessor did not violate civil service law (id. at 3-4).   The City argues that Plaintiff cites no authority for use of the phrase "not a team player" was somehow sex discrimination (id. at 4).   There was no evidence that the City treated Plaintiff less favorably than similarly situated employees outside of the protected group (id.).   The City also argues that Plaintiff has not rebutted its contention that legitimate, nondiscriminatory reasons for not appointing her to establish those reasons were pretext (id. at 6-8).   She also failed to establish that the counseling memoranda (save one) constituted an adverse employment action (id. at 8).   There was no evidence that Plaintiff complained of discrimination prior to May 17, 2016, which was after she was not appointed City Assessor, to form the basis for a subsequent retaliation claim (id. at 9).   Temporal

proximity of the subsequent memoranda and discipline from Ms. Farrell's appointment alone does not establish a retaliation claim (id. at 10 & n.47, citing Cristofaro v. Lake Shore Cent. Sch. Dist., No. 06CV487, 2011 WL 635263, at *12 (W.D.N.Y. Feb. 11, 2011) (Skretny, C.J.)).

### C.  Sex Discrimination

#### 1.  Timely Claims

Plaintiff filed her EEOC charge on November 8, 2016 (Docket No. 1, Compl. ¶ 6). Three hundred days before that date was January 13, 2016.  The City argues that her claims before January 13 are time barred (Docket No. 26, Def. Memo. at 4).  Plaintiff counters that those earlier claims are encompassed in her hostile work environment theory (Docket No. 35, Pl. Memo. at 5-6), a theory not alleged in the Complaint (see Docket No. 36, Def. Reply Memo. at 2).

As the City replies (id.), Plaintiff has not provided evidence of a hostile work environment to support her pre-January 2016 claims.  Plaintiff merely points to otherwise untimely instances when she was not appointed full-time Assessor and denied a higher salary.  She has not shown the workplace permeated with discriminatory intimidation based on age or sex or shown that City government was an abusive work environment.  Plaintiff herself selectively raised her discrimination claims, she (for example) did not mention it in her retirement statement, nor did she raise it for the disciplinary counseling memoranda.  She has not included evidence from co-workers showing either gender or age discrimination.

Plaintiff has not established a hostile work environment to allege otherwise untimely discrimination claims.  The denial of appointment as a permanent Assessor from

2004 to 2016 is untimely and barred by the statute of limitations, 42 U.S.C. § 2000e-5(e)(1). Thus, Defendant City's Motion for Summary Judgment to dismiss Plaintiff's pre-January 13, 2016, claims is granted.

### 2.  Sex Discrimination after January 2016

Plaintiff recites the standard for producing direct evidence of discriminatory intent (Docket No. 35, Pl. Memo. at 6). But she fails to provide such evidence. Hence, the prima facie case standard applies.

For Plaintiff's prima facie case (for either sex or age discrimination), Plaintiff's membership in a protected class and her qualifications for the job are unquestioned (cf. Docket No. 26, Def. Memo. at 8; Docket No. 35, Pl. Memo. at 8). At issue (again for either form of discrimination alleged) are whether she suffered adverse employment action and whether there can be an inference of discrimination.

For her sex discrimination claim, Plaintiff alleges the adverse action was not being appointed as full-time Assessor and being paid less than male department heads when she was Acting Assessor (whom Plaintiff deemed to be comparable positions) and Real Property Appraiser (see Docket No. 35, Pl. Statement ¶ 85). These pay claims, however, are time barred since they arose in 2014 and 2015, months before accrual of her Title VII claims in January 2016.

The remaining timely sex discrimination claim arose from the City's appointment of Tracy Farrell rather than Plaintiff in May 2016. This claim also has an age discrimination component, as discussed below. Plaintiff argues that hiring a person of the same sex does not avoid a sex discrimination claim (Docket No. 35, Pl. Memo. at 9,

citing Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

Reviewing the record with this motion and Plaintiff's opposition, Plaintiff has not established a prima facie case of sex discrimination.  Although denial of a promotion to the position of City Assessor (one for which she was imminently qualified) is an adverse employment action, Plaintiff has not proven an inference that this decision was due to Plaintiff's sex.  There is no inference that Plaintiff was denied additional salary for serving as Acting Assessor (assuming this time barred claim is considered) or for not being appointed Assessor in May 2016 due to her gender.

As the City argues (Docket No. 26, Def. Memo. at 10 & n.39), there is no evidence that Mayor McCaffrey and Ms. Farrell "harbored a discriminatory motive toward the plaintiff or acted with a discriminatory intent," Mathirampuzha v. Potter, 548 F.3d 70, 79 (2d Cir. 2008).  Plaintiff argues that McCaffrey was motivated by Plaintiff's rejection of the part-time Acting Assessor position in 2015, which is not tied to Plaintiff's gender (or age) (Docket No. 26, Def. Statement ¶¶ 84, 89).

To show inference of discrimination, Plaintiff needs to allege comparable co-workers that have similar duties but were treated less favorably due to gender, Lorenz v. Erie Community Coll., No. 14CV210, 2018 WL 2939492, at *3 (W.D.N.Y. June 12, 2018) (Skretny, J.), quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (excluding internal quotation marks and citation) (Docket No. 26, Def. Memo. at 8 n.31).  Her position as Real Property Appraiser was unique, there was only one person with that position.  When she also served as Acting Assessor, no one else had the duties she

exercised.   Thus, she lacked comparable employees to determine if she was treated differently due to being a woman.

Plaintiff objects to one of Mayor McCaffrey's reasons for rejecting her for the Assessor position because the Mayor did not believe Plaintiff was a "team player." Plaintiff argues that this reason was sex stereotyping against strong females.  (Docket No. 35, Pl. Memo. at 9.)  First, this was the sole instance the Mayor made that statement. Second, Plaintiff has not asserted precedent that the phrase "not a team player" is inherently sexual stereotype.   Third, there is no record that the team player statement was a veiled reference to sex stereotypes, but cf. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1072 (9th Cir. 2013) (defendants echoed "the all too familiar complaints about assertive, strong women who speak up for themselves:  'difficult,' 'negative attitude,' 'not a team player,' 'problematic,'" with courts to rejects "such sexual stereotypes").   A single statement as here that Plaintiff was not a "team player" is insufficient to state a claim for sex discrimination, especially as alleged direct evidence of such a claim, Almanza v. Sessions, No. 3:15-cv-389-TAV-HBG, 2018 WL 5262092, at *9 (E.D. Tenn. May 25, 2018); St. Louis v. New York City Health and Hosp. Corp., 682 F. Supp.2d 216, 234 (E.D.N.Y. 2010) (phrase "not a team player" is offensive, unprofessional, or childish, but fails to state a Title VII hostile work environment claim). In Almanza, the court also held that plaintiff Michelle Almanza did not meet her burden of making a prima facie case for a hostile work environment because the evidence did not reflect a sufficient connection with her sex as opposed to "a personality conflict or personal vendetta," Almanza, supra, 2018 WL 5262092, at *9.   Fourth, if Plaintiff was aware of the Mayor's statement at the time (cf. Docket No. 36, Def. Reply Memo. at 4),

she never reported the sexual stereotype, see Meier v. Shawnee Mission Med. Ctr. Inc.,
No. 18-CV-2368-JWL, 2019 WL 4537264, at *10 n.6 (D. Kan. Sept. 19, 2019).

Plaintiff retorts that there were issues of fact from the evidence establishing her
claim for sex discrimination, from Ms. Farrell's qualifications to be Assessor that should
preclude summary judgment (Docket No. 35, Pl. Memo. at 9-10).  Clearly, the claimed
issues of fact raised in the parties' Statements do not go to material issues.  Most of the
disputed facts go to the City's motivations in not hiring a full-time Assessor in 2014 to
2016 and whether the City could afford the position (beyond the limitations period for
Plaintiff's Title VII claims).  Another fact issue is Ms. Farrell's qualifications to be Assessor.
Absent evidence of gender bias (difficult to argue when Plaintiff's competition for the
position was another woman), the assessment of qualifications and determining the
credentials of an applicant are left to the discretion of the City as appointing entity, Sattar
v. Johnson, 129 F. Supp.3d 123, 139-40 (S.D.N.Y. 2015) (Docket No. 36, Def. Reply
Memo. at 5 & nn.18, 19).

As Judge David Larimer of this Court once observed, "it is well-settled that Title VII
is not an invitation for courts to sit as a super-personnel department that reexamines
employers' judgments," Lotocky v. Elmira City Sch. Dist., 149 F. Supp.3d 429, 433
(W.D.N.Y. 2015) (Larimer, J.) (quoting Delaney v. Bank of Am. Corp., 766 F.3d 163, 169
(2d Cir. 2014)) (id. at 5 n.19).  And further, as Judge Larimer held in Lotocky, 149 F.
Supp.3d at 169, Plaintiff has not rebutted the legitimate, nondiscriminatory reasons given
for the City not appointing her as Assessor in May 2016.

Among her reasons for not appointing Plaintiff, Mayor McCaffrey said was
Plaintiff's speaking out against a payment in lieu of taxes proposal, Plaintiff calling for

hiring more full-time staff at the Assessment Department when the City believed it could not afford the personnel costs, and difficulties two prior Acting Assessors had with working with Plaintiff (Docket No. 26, Def. Statement ¶ 40).  Plaintiff does raise issues of fact about her ability to work with others, producing affidavits from her colleagues (Docket No. 35, Pl. Atty. Decl. Exs. 1-4; Docket No. 35, Pl. Statement ¶ 40).  None are from officials in a supervisory position to Plaintiff (see Docket No. 35, Pl. Atty. Decl. Exs. 1, Israel Aff. ¶¶ 1-2 (Real Property Appraisal Associate and later Real Property Appraiser, trained by Plaintiff), 2, Allport Aff. ¶ 1 (Niagara County tax map technician)), albeit that one affiant, Vincent Smith, served as Assessor in the City from April 2005 to June 2006 (id. Ex. 4, Smith Aff. ¶¶ 1-2).  As such, they are not material.

Plaintiff did not contradict or raise fact issues for the other stated reasons for her not being appointed (her opposition to a payment in lieu of taxes agreement and Plaintiff's insistence on additional full-time staff).  Although she denied that the Mayor received city resident complaints about Plaintiff possibly assuming the position of Assessor (Docket No. 35, Pl. Statement ¶ 38), her denial points back to co-workers' favorable views of working with her and nothing from the city residents.

In sum, Plaintiff has not produced evidence that her sex was the impetus for the City's decision not to promote her.  Given that Plaintiff has not stated a prima facie case, the burden does not shift to the City to justify its decision on the nondiscriminatory grounds it raised.  Thus, even if there are issues of fact as to those grounds, they are not material because of the failure of Plaintiff to meet her threshold burden of proof.  Plaintiff's sex discrimination claim fails and Defendant City's Motion for Summary Judgment (Docket No. 26) dismissing that claim is granted.

D.  Age Discrimination

For her age discrimination claim, Plaintiff has established that she was in the protected class (over 40-year-old employees), was qualified for the job as Assessor, and denial of the promotion to that position was an adverse employment action.  Plaintiff needs to show that but for her age she would have received pay commensurate with her position as Acting Assessor or would have been appointed permanently as Assessor to establish the inference of age discrimination, Gorzynski, supra, 596 F.3d at 106; Pena, supra, 702 F.2d at 324.  The pay claims for when Plaintiff served as Acting Assessor are time barred as were Plaintiff's Title VII claims.  Thus, what remains is Plaintiff's age discrimination claim stemming from her not being appointed Assessor in May 2016.

Plaintiff also cannot establish any age-based animus on the part of Mayor McCaffrey because Plaintiff and Ms. Farrell are within two years of age of each other.  The Mayor testified that she did not know Plaintiff's age in 2016 when she was considering candidates to be Assessor and thought they were all about the same age (Docket No. 26, Def. Statement ¶ 41; see Docket No. 35, Pl. Statement ¶ 41 (admitting this fact)).  Plaintiff contends that the knowledge of the parties' respective ages and that the Mayor knew Plaintiff was approaching retirement age were material facts (Docket No. 35, Pl. Memo. at 14).  Plaintiff, however, contends that she was denied the full-time appointment in 2015 when the same Mayor offered her the Acting Assessor position even though she was one year further away from retirement.  Plaintiff pointed to her refusal as a reason for Mayor McCaffrey not appointing her in retaliation for rejecting the Acting Assessor position (Docket No. 35, Pl. Statement ¶¶ 84, 89) and not Plaintiff's age or her nearing retirement.

Plaintiff also rests her age discrimination claim on the fact that the City hired a less experienced person as Assessor.  The City vetted Ms. Farrell's qualifications with the New York State Civil Service Commission, which confirmed her eligibility for the position as Assessor (see Docket No. 36, Def. Reply Memo. at 3-4).  The basis for Plaintiff's objections is her belief that Ms. Farrell lacked qualification for the appointment (Docket No. 35, Pl. Memo. at 14, citing Docket No. 26, Smith Decl. Ex. E, Pl. EBT Tr. at 217, 93, Docket No. 35, Pl. Atty. Decl. Ex. 5, excerpts from Plaintiff's EBT Transcript at 210-11).  As just found with her sex discrimination claim, this Court will not serve as a super-personnel office to compare Ms. Farrell's qualifications with Plaintiff's or hold that the City was required to hire the more experienced person as Assessor.  Plaintiff did not note Ms. Farrell's prior municipal experience or her retirement system tier to determine when Ms. Farrell could retire (cf. Docket No. 35, Pl. Atty. Decl. Ex. 5, Pl. EBT Tr. at 211-12 (Plaintiff opined that Ms. Farrell was nowhere near thirty years of service, recalling that Ms. Farrell started in the real property office in 2002 and left)).  She does not argue the City was aware of Ms. Farrell's retirement eligibility.  Plaintiff also did not introduce evidence that the City considered or was aware of Plaintiff's tenure and when she could retire.  Plaintiff has not furnished evidence of the City's age bias.

For the reasons stated herein, Plaintiff failed to support her ADEA claim. Defendant City's Motion for Summary Judgment (Docket No. 26) is granted.

### E.  Retaliation Claim

Finally, Plaintiff alleges that the City retaliated against her for complaining about age or sex discrimination in not being the full-time Assessor.  She also contends that she

was denied promotion in retaliation (Docket No. 35, Pl. Memo. at 11).  Again, most of this claim is time barred for alleged retaliation that occurred before January 2016.

The focus of the retaliation is Ms. Farrell's disciplinary counseling memoranda and other sanctions imposed after she became Assessor.  While Plaintiff alleges age and sex discrimination prior to Ms. Farrell became Assessor, she does not allege complaints she made to Ms. Farrell (or Ms. Farrell was aware of) after that appointment.

Ms. Farrell testified that she distrusted Plaintiff (Docket No. 26, Def. Statement ¶ 58) and Plaintiff testified that she thought Ms. Farrell was so incompetent that Plaintiff had to monitor her work (Docket No. 35, Pl. Statement ¶ 58, citing Docket No. 26, Smith Decl. Ex. E, Pl. EBT Tr. at 123-25, 186), an unusual supervisory arrangement.  Ms. Farrell denied connecting counseling memoranda to Plaintiff's age or gender discrimination (Docket No. 26, Def. Statement ¶ 59, citing Docket No. 26, Smith Decl., Ex. H, Farrell EBT Tr. at 106-07 (denying issuing counseling or discipline to Plaintiff because of her gender or age); Farrell Decl. ¶ 16 (same)).  Plaintiff disputes this (Docket No. 35, Pl. Statement ¶ 59).

Review of the counseling memoranda and reprimands shows that they included Plaintiff claiming compensatory time without Ms. Farrell's consent; data discrepancies (again without notifying Ms. Farrell first); Plaintiff failing to gaining information about building permits (including conducting field inspections); and Plaintiff's alleged deletions from the City's database (without Ms. Farrell's knowledge) (Docket No. 26, Def. Statement ¶¶ 60, 61, 63-68, 69-70, 74-75, 71-72, 73; see generally Docket No. 26, Farrell Decl.).  Plaintiff grieved these forms of discipline (without raising allegations of retaliation) and generally without success (Docket No. 26, Def. Statement ¶¶ 68, 70, 72, 75, 76; but

28

cf. Docket No. 35, Pl. Statement ¶ 76 (Plaintiff denies the actions on her grievances was dispositive as to whether she suffered discrimination or retaliation)) save the first compensatory time memorandum (id. ¶ 61).  Plaintiff only presents her contention that this discipline was retaliatory without other evidence.  She contends that there was a causal connection from the time she filed internal and EEOC charges and this discipline (Docket No. 35, Pl. Memo. at 11).

What Plaintiff also failed to establish was the materiality of the memoranda and oral reprimands.  She complains that one memorandum, as to claiming compensatory time without permission, did have an unspecified financial cost (id.).  That first memorandum was removed from her personnel file after she grieved it (see Docket No. 36, Pl. Statement ¶ 61) but the second and third memoranda from December 2016 and June 2018 for the same conduct (id. ¶ 60) remain without any grievance or alteration. Plaintiff merely claimed that her compensatory time scheme was used by Plaintiff and Ms. Israel in 2016 to 2018 without objection until Ms. Farrell disciplined (id.).  Regardless of the truth of the compensatory time procedure, these memoranda have consequence. This appears less retaliatory because the discipline also was directed at Ms. Israel; Plaintiff made no allegation that Ms. Israel was discriminated or retaliated for complaining.

The rest of the discipline had no expressed consequence beyond inclusion in Plaintiff's personnel file; she does not claim any further consequence from this discipline. "To be materially adverse, the change must be more disruptive than a mere inconvenience or an alteration of job responsibilities . . . and must dissuade a reasonable worker from making or supporting a charge of discrimination," Mula, supra, 2018 WL

501277, at *5 (citations and internal quotation marks omitted) (Docket No. 26, Def. Memo. at 17 & n.82).

As for the other counseling memoranda and reprimands, Plaintiff cites no sanction arising from this discipline. Even the memoranda in December 2016 and June 2018 on claiming compensatory time does not state how much she lost in not seeking compensatory time without permission. Further, assuming this discipline constituted adverse employment action, Plaintiff has not made the causal connection to her age or sex discrimination complaints. Here mere temporal connection does not establish a causal connection.

Finally, Plaintiff fails to allege retaliation for asserting her discrimination claims. Defendant's Motion for Summary Judgment (Docket No. 26) to dismiss this claim is granted.

## IV.     Conclusion

Plaintiff complains that she was underpaid (as compared with male department heads) while she served as Acting Assessor, was denied appointment to the permanent Assessor, and she was more qualified than the younger woman appointed City Assessor (to the point Plaintiff felt the need to monitor her supervisor). She alleges age and sex discrimination in this pay discrepancy and in not being promoted to this permanent position as well as retaliation when she raised these discrimination claims. These claims are without merit.

Plaintiff's claims alleged before three hundred days prior to filing her EEOC charge in November 2016 are time barred and Defendant's Motion for Summary Judgment (Docket No. 26) is granted. Her remaining timely sex discrimination claims (arising from

her not being appointed City Assessor in May 2016) are denied as are her age discrimination claims because she did not establish a prima facie case for either form of discrimination.  Plaintiff also has not established retaliation by the City for raising these discrimination claims in subsequent discipline she received from the new Assessor.

Thus, Defendant's Motion for Summary Judgment (Docket No. 26) is granted.

## V.      Orders

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 26) is GRANTED.

FURTHER, the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:          August 23, 2021
                Buffalo, New York


                                             s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge